AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN
                                    **DISTRICT OF**    NEW YORK

Min Kou Chenette

(Plaintiff)

**SUMMONS IN A CIVIL CASE**

JUDGE CASEY

v.

Kenneth Cole Productions, Inc.

(Defendant)

CASE NUMBER:

**05 CV    4849**

TO: (Name and address of defendant)

Kenneth Cole Productions, Inc.
603 West 50th Street
New York, NY 10019

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

James Batson, Esq.
Liddle & Robinson, LLP
800 Third Avenue, 8th Floor
New York, NY 10022

20

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

MAY 1 9 2005

DATE

RECEIVED 05 MAY 19 PM 5:31 U.S. DISTRICT COURT S.D.N.Y.

(BY) DEPUTY CLERK

**CIVIL COVER SHEET**

JUDGE CASEY

05 CV 4849

JS 44C/SDNY
REV. 1/97
WEB 4/99

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Min Kou Chenette | Kenneth Cole Productions, Inc. |

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Liddle & Robinson, LLP
800 Third Avenue
New York, NY 10022  (212) 687-8500

ATTORNEYS (IF KNOWN)
James Batson, Esq.

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE )
Title VII of the Civil Rights Act, 42 USC Section 2000e etseq., NYS Human Rights Law Section 296, NYC Human Rights Law Section 8-101et seq. of the NYC Admin. Code.

Has this or a similar case been previously filed in SDNY at any time? No ☒ Yes? ☐   Judge Previously Assigned

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No ☐ Yes ☐  If yes, give date                 & Case No.

RECEIVED
MAY 19 2005
U.S.D.C. S.D.N.Y.
CASHIERS

(PLACE AN [x] IN ONE BOX ONLY)        NATURE OF SUIT

**TORTS**

CONTRACT
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY

PERSONAL INJURY
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

PERSONAL PROPERTY
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

FORFEITURE/PENALTY
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

LABOR
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

BANKRUPTCY
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

PROPERTY RIGHTS
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

SOCIAL SECURITY
[ ] 861 HIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

FEDERAL TAX SUITS
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

OTHER STATUTES
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

REAL PROPERTY
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

CIVIL RIGHTS
[ ] 441 VOTING
[X] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 440 OTHER CIVIL RIGHTS

PRISONER PETITIONS
[ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

_Check if demanded in complaint:_

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____         DOCKET NUMBER _____

_Check YES only if demanded in complaint_
JURY DEMAND: ☒ YES ☐ NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN x IN ONE BOX ONLY)*                    **ORIGIN**

[X] 1 Original    [ ] 2 Removed from    [ ] 3 Remanded from    [ ] 4 Reinstated or    [ ] 5 Transferred from    [ ] 6 Multidistrict    [ ] 7 Appeal to District
     Proceeding         State Court        Appellate Court      Reopened           (Specify District)      Litigation         Judge from
                                                                                       Magistrate Judge
                                                                                       Judgment

*(PLACE AN x IN ONE BOX ONLY)*      **BASIS OF JURISDICTION**                    *IF DIVERSITY, INDICATE*
[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [X] 3 FEDERAL QUESTION    [ ] 4 DIVERSITY      *CITIZENSHIP BELOW.*
                                       (U.S. NOT A PARTY)                            *(28 USC 1322, 1441)*

### CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)** (Calendar Rule 4(A))

320 East 46th Street, Apt. 14C
New York, NY 10017
New York County

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)** (Calendar Rule 4(A))

603 West 50th Street
New York, NY 10019
New York County

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   **THIS ACTION SHOULD BE ASSIGNED TO:**   [ ] WHITE PLAINS   [X] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE
5/19/05         SIGNATURE OF ATTORNEY OF RECORD          ADMITTED TO PRACTICE IN THIS DISTRICT
RECEIPT #                                                [ ] NO
                  *James A. Bitson*                      [X] YES (DATE ADMITTED Mo. __9__ Yr. _1993_)
                                                         Attorney Bar Code # JB 2716

**Magistrate Judge** is to be designated by the Clerk of the Court.

**Magistrate Judge** _____ is so Designated.

**James M. Parkison, Clerk of Court by** _____ Deputy Clerk, DATED _____

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                                    :
MIN KOU CHENETTE                                    :
                                                    :
        Plaintiff,                                  :        COMPLAINT
                                                    :
        v.                                          :
                                                    :
KENNETH COLE PRODUCTIONS, INC.                      :
                                                    :
                                                    :
        Defendant.                                  :
                                                    :
------------------------------------------------------------x
```

## JURY TRIAL IS DEMANDED

Plaintiff, by and through her attorneys, Liddle & Robinson, L.L.P. and Mark D. Schwartz, as and for a Complaint against the above-named Defendant, alleges as follows:

## INTRODUCTORY STATEMENT

1.      This is an action for damages sustained by Min Kou Chenette, ("Plaintiff") a female of Korean national origin commenced against her former employer, KENNETH COLE PRODUCTIONS, INC., for employment discrimination on account of sex, race, and national origin, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 USC Section 2000e *et seq.*), 42 U.S.C. Section 1981, the New York State Executive Law, McKinneys Executive Law Section 290 *et seq.*, particularly Section 296,  and the New York City Human Rights Law, New York City Administrative Code, Section 8-101, *et seq.*, and for violations of various common law duties.

## JURISDICTION & VENUE

2.      The jurisdiction of the Court is predicated on 28 U.S.C. Section 1331, 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Section 1343(a).  Plaintiff invokes the supplemental jurisdiction of this Court to consider related claims under the statutory and common law of New York State ("State") and New York City pursuant to 28 U.S.C.  Section 1367.  This action is brought after timely filing of a Complaint with the Equal Opportunity Commission on or about September 9, 2004 and Plaintiff Min Kou Chenette's receipt of a "right to sue letter" dated February 18, 2005.  Ms. Chenette served copies of this Complaint upon the New York City Commission on Human Rights and Corporation counsel prior to filing it in the United States District Court.

3.      The proper venue of this action is in this Court as Plaintiff was working in and is a resident of this State and the referenced judicial district at the time of the improper treatment alleged herein and the headquarters of KCPI is within the Southern District of New York and the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

## PARTIES

4.      **MIN KOU CHENETTE**, the Plaintiff herein, is now and at all times material and relevant to this action, was a resident of the State and the City of New York.

5.    **KENNETH COLE PRODUCTIONS, INC.** (hereinafter "the Company") is a defendant herein.  The Company now and at all times material and relevant to this action, was a corporation duly registered and licensed to do business in the State of New York with its headquarters in New York City, New York.

## FACTUAL ALLEGATIONS

6.    Plaintiff, Min Kou Chenette, ("Plaintiff") who is a Korean female, was hired by Defendant on August 1, 2003, after serving as a Company intern from September 2002, through July, 2003.

7.    Plaintiff was hired by Ellen Rodriguez.  Plaintiff last held the position of International Coordinator for the Company until August 25, 2004, when she was forced to leave her employment as a result of an intolerable discriminatory work environment, sexual and other forms of harassment, assault, battery, defamation and retaliation for her complaining about her mistreatment.  These conditions and the hostile working environment made it unreasonable for her to continue in her employment and resulted in what amounted to a de facto or constructive discharge.

8.    Beginning in September 2002, and continuing throughout the remainder of her employment, Plaintiff was subjected to a regular, frequent, unwanted, and abusive pattern of behavior directed against her, as well as a working environment characterized by lewd, racial, and sexual comments and innuendos, slander, offensive physical contact, and other inappropriate

behavior by certain individuals. Other managers of the Company excused, condoned, and in some cases, affirmatively encouraged such misconduct.

9.    From September 2002 through July 2003, Plaintiff worked for the Company as an intern under Marsha Mosser in the Wholesale Planning Department. During this time Rachel Packer, then an International Licensing Coordinator for the Company repeatedly exhibited a racist, condescending and antagonistic attitude towards plaintiff. This behavior continued, and in fact escalated, throughout Ms. Packer's tenure at the Company.

10.    After being hired by the Company on August 1, 2003, Plaintiff was subjected to nasty and unpleasant behavior from Meredith Mace, her former boss. In the presence of others, Ms. Packer said, "I analyzed why Meredith Mace does not like you. It is because you are a Korean and a foreigner and it's the same reason she does not like your friend downstairs." Plaintiff objected to Ms. Packer's comments and told her that she needed to be careful with what she says.

11.    In or about November 2003, Vincent Montemarano joined the Company as Director of International Licensing. On March 31, 2004, he was promoted to Vice President of International Licensing. Mr. Montemarano was Plaintiff's direct supervisor throughout Plaintiff's employment with the Company.

12.    In December 2003 Plaintiff received her first formal performance review from the Company. It was positive.

4

13.     In late December 2003, Ellen Rodriguez invited everyone from the office team to her house for a Holiday party.  This was the first time that Plaintiff's husband, Leo Chenette, met his wife's co-workers, including, Ms. Packer.  Before going to the party Leo Chenette arrived at the Company's offices to join his wife prior to going to the party together.  It was then that Ms. Packer asked him if Plaintiff was his "Asian Porn Star."

14.     In February 2004, Ms. Packer made racist and sexist comments to Plaintiff about an African-American information technology professional.  She said, "don't you think that he must have a big penis?  You know, he is a big black man."  Plaintiff objected to these inappropriate comments.  Despite plaintiff's protestation, however, many times thereafter, when this man passed by them, Ms. Packer looked at Plaintiff, made a gesture simulating the performance of oral sex, and smiled.

15.     Despite Plaintiff's protestation, Ms. Packer escalated her improper behavior.  Such behavior included fixating aloud about the size of the penises of African-American males and criticizing how, according to her, African-Americans name their children with certain names.

16.     Others in addition to Ms. Packer contributed to a hostile and inappropriate work environment.  In early March 2004, a Company employee who was pregnant, found out that she was going to have another baby boy, her second and told the team about this.  Several days later, during lunch with the team in the Company cafeteria, Mr. Montemarano addressed her in front of others, including Plaintiff, by saying: "You know, if you have two boys while

they are young and growing up, they give each other head." The pregnant employee said "so you are telling me my (name of older son) will give head to my newborn boy?" Mr. Montemarano said, "Yes, they do that."

17.   On approximately March 31, 2004, Mr. Montemarano was promoted to Vice President of International Licensing. Learning of this promotion, Plaintiff met with him and asked if it would be possible for plaintiff to be promoted to the level of Associate Manager for Asia. She also asked him if there was anything that she needed to do in the way of improvement in order to be qualified for the promotion. Mr. Montemarano said: "I will consider you for the position as of now. You have a great amazing follow-up skills and great analytical skill."

18.   Despite their knowledge of Defendant Packer's abhorrent conduct, Mr. Montemarano and Ms. Rodriguez promoted Ms. Packer to Associate Manager of International Licensing. This was done despite her lack of qualifications. As admitted by Ms. Rodriguez, Ms. Packer did not deserve and was not qualified for her initial position, let alone the promotion. At the same time, despite Mr. Montemarano's promises of advancement to Plaintiff, Mr. Montemarano and Ms. Rodriguez passed over Plaintiff for both the positions of Associate Manager of International Licensing, as well as that of Associate Manager for Asia. The latter position was filled by a former co-worker from Mr. Montemarano's former firm, Nautica, Inc. Plaintiff was qualified for both positions.

19.     After being passed over for both positions, Plaintiff requested a meeting with Mr. Montemarano.  After expressing her disappointment, Plaintiff asked him about her future role on the team and was told that she would assist the new Associate Manager, but he didn't specify which Associate Manager.

20.     In early May, 2004, Ms. Packer continued to make racist comments about three African-American employees.  She said:  "They represent the typical racial profile.  Black males who have a couple of kids with girlfriends, not married.  Look at their sister, she is 21 and has a kid already and is not married."

21.     On May 28, 2004, Plaintiff was on her way back to her desk from a meeting.  Cyndi Shapiro saw her walking by and asked her to stop, whereupon Ms. Shapiro said: "Hey, I am sorry if I was nasty to you on the phone yesterday, but I am overwhelmed and understaffed, and I lost my control there.  I hope that you are ok with that."  Then, she came over to Plaintiff, petted her cheek with her two hands, and kissed her on the lips.

22.     On June 1, 2004, Plaintiff told Mr. Montemarano what took place regarding the incident on May 28, with Ms Shapiro.  His response was to laugh and turn away.

23.     Immediately after being told what took place, Mr. Montemarano required Plaintiff to attend a store design meeting together with Ms. Shapiro.

24.    One hour after the store design meeting, Mr. Montemarano asked Plaintiff to sit down and talk. He said: "I thought that you were ok with Cyndi kissing you on your lips, weren't you?" Plaintiff responded that she was scared and uncomfortable being around her. Mr. Montemarano said: "Ok, let's monitor this and see how this goes, and please do not go to talk to HR [Human Resources] for any issue, but talk to me beforehand."

25.    Notwithstanding Mr. Montemarano's direction not to go to Human Resources, Plaintiff had already spoken with, and subsequently spoke with Ms. Renee Kim of the Human Resources Department.

26.    On June 17, 2004, plaintiff met with Mr. Montemarano about her performance review for the last six months. Mr. Montemarano said that she was performing fine, but that Plaintiff had attitude problems. He said that she had created a hostile environment for Kenneth Cole employees. When asked for examples, however, Mr. Montemarano did not provide any.

27.    Plaintiff sought to take notes of the meeting. Mr. Montemarano instructed her not to write anything down. Among other things, he said: "Just off the record, I am giving you personal advice that you do not get anywhere without networking and personal relationships. For example, I knew Ellen from a previous company, and she hired me in." Mr. Montemarano was referring to Ms. Rodgriguez. Plaintiff Min Kou Chenette asked him to reconsider giving her this review which she believed to be false, but he said, "I reviewed this with Ellen already and you have to sign it now."

28.     On June 21, 2004, Mr. Montemarano asked Plaintiff to update the organizational chart for the department with a new additional team member.  Mr. Montemarano and Ms Rodriguez had hired another employee from Nautica, Inc., Mr. Montemarano's former firm, for the position of Director of International Merchandising.

29.     On June 23, 2004, Plaintiff needed to drop something off at Mr. Montemarano's desk.  Ms. Packer was there talking to him.  Plaintiff dropped off the material and was about to walk away from the desk when Ms. Packer poked her finger into Plaintiff's breasts and said: "Geez, they are sure big.  They are about to bust out." Plaintiff repeatedly told her to stop this offensive touching, but Ms. Packer ignored her.  Mr. Montemarano saw happened, did nothing to stop it, and instead turned away.

30.     On June 28, 2004, Plaintiff was unable to attend a department meeting, but a fellow employee told her what took place.  Initially, everyone was at the meeting except Hyun-Hye Lim and her male intern, Sang-Huck Woo.  They arrived a little later, and Ms. Packer said " Here they come, Hyun-Hye and her sex slave."  Plaintiff was told that everyone present was laughing at the reference.

31.     A meeting was scheduled and held on or about June 30 or June 31, attended by Renee Kim, Ms. Rodriguez, and Plaintiff, ostensibly to discuss Plaintiff's complaints of discrimination and harassment.  Instead, Company representatives focused upon Plaintiff's performance review.  Ms. Rodriguez said that this was "all about" the performance review.  She said that Plaintiff was a very smart, hard-working person with a lot to offer.  "You also have a

sweet side of you that people enjoy." At which point, Plaintiff said the fact that Ms. Rodriguez recently gave her an awful review, with Mr. Montemarano signing it. Ms. Rodriguez admitted doing this. She also said, "This six months' performance review is like a little stain on your shirt. A bad review will not kill you. This is not a permanent scar and it is something that you can get rid of." The meeting was concluded with none of Plaintiff's concerns about discrimination, harassment, and retaliation being addressed.

32.    From July 7, 2004 onward, Plaintiff noticed that she was shunned by some of her co-workers.

33.    Ms. Packer's improper behavior continued unabated. On July 8, 2004, Ms. Jackie Kontizas, who is a Puerto Rican-American, told Plaintiff that Ms. Packer made discriminatory remarks and had directed some of them at her. She recalled being told by Ms. Packer "to bring her Puerto Rican ass over to her apartment with a handkerchief over her head and clean her place for her."

34.    Despite repeatedly having been supplied with specifics by and on behalf of Plaintiff, in-house Company attorneys Michael Colosi and Shari Berman said that they wanted to "interview" Plaintiff, and said that her failure to participate in such a meeting would constitute insubordination.

35.    Prior to this "interview", Plaintiff was forced to take several weeks of both personal and vacation time because of the stress that she had undergone at the Company. She

also has had to take time off to see physicians to deal with severe headaches that she had never experienced prior to the problems that she encountered at work at the Company.

36.    On August 23, 2004, Mr. Montemarano told Plaintiff that Ms. Packer was no longer with the Company.  He said that her duties would be split between him and two other employees.  He went on to say that if the work became overwhelming, that he would hire more people. Again, Plaintiff was passed over for a promotion and should have received the position vacated by Ms. Packer.

37.    On August 24, 2004 Ms. Berman and Gail Catropa, of Human Resources, conducted a full daylong videotaped  "interview" of  Plaintiff, claiming that this was consistent with a company policy that had "zero tolerance" for a discriminatory working environment. Despite being previously told that Plaintiff had already reported virtually all the specifics, Ms. Berman insisted upon hearing it in Plaintiff's own words.  He would not allow Plaintiff to refer to any notes.  By contrast, Ms. Berman was reading from a prepared text.

38.    When Plaintiff started to address specifics, Ms. Berman repeatedly interrupted her, and stated that she would come back to that issue later.  Plaintiff was upset and distraught at having to recount the same specifics she had previously detailed. Plaintiff broke down and cried and told them that this "interview" was nothing more than a whitewash and a continuing form of harassment.   Nevertheless, Plaintiff continued to respond to the questions of Ms. Berman and Ms. Catropa for the remainder of the day.

39.      After a full day of questioning, Ms. Berman and Ms. Catropa insisted that Plaintiff return for more questioning the following day.  Plaintiff told them that their questions were repetitive and unfocused. They were very far from the subject matter.  Plaintiff said that she considered this to be more discrimination, harassment and retaliation on their part.

40.      In a letter of August 25, 2004 addressed to Mr. Montemarano and Company founder and Chairman Kenneth Cole, Plaintiff resigned as a result of the intolerable treatment she had endured to date and which she felt she could no longer endure.

41.      In her letter of August 25, 2004, Plaintiff stated that if Company representatives had any remaining questions, that they could submit them to her in writing.  To date, no further questions have been received from Company representatives.

42.      On August 26, 2004, Mr. Montemarano told the Company employees with whom Plaintiff had worked, that Plaintiff had left the Company.  On that same day Plaintiff received a letter from Ms. Catropa stating that "the only way to find out the specific facts and circumstances relating to the alleged wrongful conduct was, and is, to interview you."   The Company had long ago known of the specific facts and circumstances when Plaintiff had complained to her superiors and Human Resources.   Despite Plaintiff's offer to respond to written questions, to date no further questions have been received from Company representatives.

43.    Plaintiff endured Defendant's abuse and mistreatment because she needed the income and career experience provided by Defendant Company. The experience has left Plaintiff emotionally traumatized and depressed. To date, Plaintiff has not been able to find re-employment in the fashion industry.

44.    The discrimination and retaliation described above are ongoing as a continuing violation of applicable civil rights laws.

45.    Timely representative charges of racial discrimination, sexual discrimination, sexual harassment and unlawful retaliation were filed with the Equal Employment Commission ("EEOC") on or about September 9, 2004.

46.    Plaintiff received a " Notice of Right to Sue" from the EEOC dated February 18, 2005.

47.    The Complaint in this matter was filed within 90 days following the receipt of the "Notice of Right to Sue."

48.    By the acts and conduct described above, the Company, its officers and employees named herein, intended to cause Plaintiff severe emotional distress, or they acted in reckless disregard for the fact that their action would and did cause Plaintiff such injury.

49.    Plaintiff suffered severe emotional and mental distress as a direct and proximate result of the conduct of Company, its officers and employees named herein.

50.    The acts and conduct of the Company, its officers and employees named herein constitute extreme and outrageous conduct beyond the bounds of common decency.

51.    Plaintiff has lost wages and other benefits, suffered embarrassment and humiliation and her career has been irreparably damaged as a result of the conduct of the Company, together with its officers and employees named herein.

52.    Plaintiff has suffered loss of enjoyment of life, inconvenience and nonpecuniary losses as a direct result of their conduct.

53.    The aforesaid pattern of harassment, discrimination, assault and battery, demeaned Plaintiff both personally and professionally, caused her mental anguish, anxiety and humiliation, caused her physical and emotional injury (including loss of self-esteem and loss of enjoyment of life) and resulted in a loss of benefits and income, as well as out of pocket losses incurred by Plaintiff.

54.    The aforesaid pattern of defamation consisting of untrue written statements contained in various reviews as well as oral statements, some of which were defamatory per se, harmed Plaintiff both personally and professionally, caused her mental anguish, anxiety and humiliation, caused her physical and emotional injury (including loss of

self-esteem, loss of enjoyment of life, and loss of esteem by others) and resulted in specific damages incurred by Plaintiff.

55.    Such defamation could have been obviated altogether, but for the reckless disregard for her safety and propriety that the Company, its officers and employees exhibited in terms of their governance of behavior in the workplace.

## COUNT I

### SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII

56.    Plaintiff realleges paragraphs 1 to 55 and incorporates them by reference as paragraphs 1 to 55 of Count I of this Complaint.

57.    Title VII of the Civil Rights Act of 1964, 24 U.S.C, Section 2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of gender or sex.

58.    Plaintiff Min Kou Chenette is female.

59.    Defendant Company is liable for the discrimination alleged herein under the doctrine of respondeat superior.

60.     Sexual harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as sexual or gender-based discrimination.

61.     With respect to allegations of sexual harassment, Defendant Company is strictly liable for the acts of its supervisory employees because the harassers used their actual or apparent authority to further the unlawful conduct and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

62.     Defendant Company is liable for the acts of co-workers of Plaintiff because Defendant Company provided no reasonable avenue of complaint .

63.     Defendant Company is liable for the acts of co-workers because it knew of the harassment but did nothing about it.

64.     Defendant Company is liable for the acts alleged herein because the Defendant Company's top echelon and departmental heads established the corporate culture at the Company, which encouraged sexual discrimination and harassment.

65.     The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Plaintiff Min Kou Chenette's employment, affected the terms, conditions and privileges thereof in violation of Title VII, and resulted in Plaintiff Min Kou Chenette's constructive discharge or forced resignation from her position.

66.     Based upon the foregoing Defendant Company has discriminated against Plaintiff on the basis of her sex and have deprived her of her rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*

67.     As a result of such conduct by Defendant Company, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant Company's illegal conduct.

68.     Because Defendant Company's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT II

## RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

69.     Plaintiff realleges paragraphs 1 to 68 and incorporates them by reference As paragraphs 1 to 68 of Count II of this Complaint.

70.     Title VII of the Civil Rights Act of 1964, 24 U.S.C, Section 2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

71.     Plaintiff is an Asian.

72.     Defendant Company is liable for the discrimination alleged herein under the doctrine of respondeat superior.

73.     Racial discrimination and racial harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII.

74.     Defendant Company is liable for the acts of co-workers because it knew of the harassment but did nothing about it.

75.     With respect to allegations of racial harassment, Defendant Company is strictly liable for the acts of its supervisory employees because the harassers used their actual  or apparent authority to further the unlawful conduct and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

76.     Defendant Company is liable for the acts of co-workers of Plaintiff because Defendant Company provided no reasonable avenue of complaint.

77.     Defendant Company is liable for the acts of co-workers of Plaintiff because it knew of the harassment but did nothing about it.

78.     Defendant Company is liable for the acts alleged herein because the Defendant Company's top echelon and departmental heads established the corporate culture at the Company, which encouraged racial discrimination and harassment.

79.     The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Plaintiff 's employment, affected the terms, conditions and privileges thereof in violation of Title VII, and resulted in Plaintiff's constructive discharge or forced resignation from her position.

80.     Based upon the foregoing, Defendant Company has discriminated against Plaintiff on the basis of her race and has deprived her of her rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*.

81.     As a result of such conduct by Defendant Company, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant Company's illegal conduct.

82.     Because Defendant Company's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT III

## DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII

83.    Plaintiff realleges paragraphs 1 to 82 and incorporates them by reference as paragraphs 1 to 82 of Count III of this Complaint.

84.    Title VII of the Civil Rights Act of 1964, 24 U.S.C, Section 2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of national heritage.

85.    Plaintiff is of Korean national origin.

86.    Defendant Company is liable for the discrimination alleged herein under the doctrine of respondeat superior.

87.    Discrimination and harassment on account of national origin creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII.

88.    Defendant Company is liable for the acts of co-workers because it knew of harassment but did nothing about it.

89.     Defendant Company is liable for the acts alleged herein because the Defendant Company's top echelon and departmental heads established the corporate culture at the Company, which encouraged discrimination and harassment on the basis of national origin.

90.     The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Plaintiff's employment, affected the terms, conditions and privileges thereof in violation of Title VII, and resulted in Plaintiff's constructive discharge or forced resignation from her position.

91.     Based upon the foregoing, Defendant Company has discriminated against Plaintiff on the basis of her national origin and has deprived her of her rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*.

92.     As a result of such conduct by Defendant Company, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant Company's illegal conduct.

93.     Because Defendant Company's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT IV

## RETALIATION IN VIOLATION OF TITLE VII

94.    Plaintiff realleges paragraphs 1 through 93 and incorporates them by references as paragraphs 1 through 93 of Count IV of this Complaint.

95.    Title VII, specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

96.    Defendant Company retaliated against Plaintiff for her complaints in violation of the anti-retaliation provisions of Title VII.  By its conduct, Defendant Company subjected Plaintiff to unlawful retaliation in violation of Title VII.

97.    As a result of such conduct by Defendant Company, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant Company's illegal conduct.

98.    Because Defendant Company's retaliatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff 's federally-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant Company.

## COUNT V

**DISCRIMINATION ON THE BASIS OF RACE, COLOR AND NATIONAL ORIGIN UNDER 42 U.S.C SECTION 1981**

99.     Plaintiff realleges paragraphs 1 through 98 and incorporates them by reference as paragraphs 1 through 98 of Count V of this Complaint.

100.     By its actions detailed above, the Company's conduct towards Plaintiff constitutes an infringement of her rights to make and enforce contracts in violation of Section 1981.

101.     As a result of the Company's discriminatory conduct, Plaintiff has suffered substantial damages, including emotional distress, in an amount as yet undetermined.

102.     The Company's discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

103.     By reason of the foregoing Defendant Company is liable to Plaintiff for back pay, front pay or reinstatement, compensatory damages, punitive damages, pre-judgment interest attorneys' fees and costs.

## COUNT VI

### SEXUAL DISCRIMINATION
### IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW

104.   Plaintiff realleges paragraphs 1 through 103 and incorporates them by reference as paragraphs 1 through 103  of Count VI of this Complaint.

105.   The State of New York's Human Rights Law, New York State Executive Law, Article 15, McKinneys Executive Law Section 290 *et seq*., particularly Section 296, ("Human Rights Law"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.  The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

106.   The Human Rights Law as amended, New York makes it unlawful for a resident person or domestic corporation to violate any provisions of the Human Rights Law.

107.   Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the State of New York is Defendant's headquarters, its nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

108.    Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and actually participated in the conduct giving rise to the discrimination claims.

109.    Company management is liable because they had the power to hire and fire Company employees and aided and abetted the discriminatory acts, as alleged herein.

110.    As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant Company's illegal conduct.

111.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's State-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT VII

### SEXUAL HARASSMENT
### IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW

112.    Plaintiff realleges paragraphs 1 through 111 and incorporates them by reference as paragraphs 1 through 111 of Count VII of this Complaint.

113.    The State of New York's Human Rights Law, New York State Executive Law, Article 15, McKinneys Executive Law Section 290 *et seq.*, particularly Section 296, ("Human Rights Law"), makes unlawful sexual harassment that creates and abusive and hostile work environment such that the conditions of employment are altered.  The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

114.    The Human Rights Law as amended, makes it unlawful for a resident person or domestic corporation to violate any provisions of the Human Rights Law.

115.    Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the State of New York is the Company's headquarters, its nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

116.    Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and each actually participated in the conduct giving rise to the sexual harassment claims.

117.    Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of sexual harassment, as alleged herein.

118.    As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things,

emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant Company's illegal conduct.

119.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's State-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT VIII

### DISCRIMINATION ON ACCOUNT OF RACE
### IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW

120.    Plaintiff realleges paragraphs 1 through 119 and incorporates them by reference as paragraphs 1 through 119 of Count VIII of this Complaint

121.    The State of New York's Human Rights Law, New York State Executive Law, Article 15, McKinneys Executive Law Section 290 *et seq.*, particularly Section 296, ("Human Rights Law"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.  The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

122.    The Human Rights Law, makes it unlawful for a resident person or domestic corporation to violate any provisions of the Human Rights Law.

123.   Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the State of New York is the Company's headquarters, its nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

124.   Company employees aided and abetted the unlawful conduct, as alleged herein, and each actually participated in the conduct giving rise to the racial discrimination claims.

125.   Company management is liable because he had the power to hire and fire Company employees and aided and abetted the acts of racial discrimination, as alleged herein.

126.   As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

127.   Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's State-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT IX

### DISCRIMINATION ON ACCOUNT OF NATIONAL ORIGIN
### IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW

128.   Plaintiff realleges paragraphs 1 through 127 and incorporates them by reference as paragraphs 1 through 127 of Count IX of this Complaint.

129.   The State of New York's Human Rights Law, New York State Executive Law, Article 15, McKinneys Executive Law Section 290 *et seq.*, particularly Section 296, ("Human Rights Law"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of national origin.   The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

130.   The Human Rights Law makes it unlawful for a resident person or domestic corporation to violate any provisions of the Human Rights Law.

131.   Defendant Company is authorized to do business in the state of New York and its principal place of business is located there. Further, the state of New York is Kenneth Cole's headquarters, its nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

132.    Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and each actually participated in the conduct giving rise to the claims pertaining to discrimination on the basis of national origin, as alleged herein.

133.    Company management is liable because he had the power to hire and fire Company employees and aided and abetted the acts of discrimination on the basis of national origin, as alleged herein.

134.    As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

135.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's New York State-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT X

### RETALIATION IN VIOLATION OF
### NEW YORK HUMAN RIGHTS LAW

136.    Plaintiff realleges paragraphs 1 through 135 and incorporate them by reference as paragraphs 1 through 135 of Count X of this Complaint.

137.   The Human Rights Law, specifically New York State Executive Law Section 296(e) makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

138.   Defendant Company is authorized to do business in the state of New York and its principal place of business is located there. Further, the Company's headquarters is located in New York City which headquarters serves as its nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

139.   Plaintiff complained of discrimination and harassment. As a result she was retaliated against repeatedly in terms of being passed over for promotions and in terms of having to endure the hostile and illegal working environment fostered and maintained by Defendants all in violation of the Human Rights Law.

140.   Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and because each actually participated in the conduct giving rise to the claims pertaining to discrimination on the basis of national origin, as alleged herein.

141.   Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of retaliation as alleged herein.

142.    As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

143.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's State-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT XI

### SEXUAL DISCRIMINATION IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE

144.    Plaintiff realleges paragraphs 1 to 143 and incorporates them by reference as paragraphs 1 to 143 of Count XI of this Complaint.

145.    The New York City Human Rights Law, Administrative Code of the City of New York, Section 8-101, et seq., particularly Section 107 ("Administrative Code") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

146.    Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the Company's headquarters is located in the New York City, which headquarters serves as the Company's nerve center from

which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

147.    Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and because each actually participated in the conduct giving rise to the claims pertaining to sexual discrimination, as alleged herein.

148.    Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of sexual discrimination and harassment, as alleged herein.

149.    As a result of such conduct by Defendant, which has subjected her to sexual discrimination in violation of the Administrative Code, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

150.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's New York City-protected rights due to which Plaintiff is entitled to an award of punitive damages against Defendant.

151.    Plaintiff has served the City Commission on Human Rights and Corporation Counsel with this Complaint prior to filing it.

## COUNT XII

### SEXUAL HARASSMENT IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE

152.    Plaintiff realleges paragraphs 1 to 151 and incorporates them by reference as paragraphs 1 to 151 of Count XII of this Complaint.

153.    The New York City Human Rights Law, Administrative Code of the City of New York, Section 8-101, et seq., particularly Section 107 ("Administrative Code") makes unlawful sexual harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered.

154.    Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the Company's headquarters is located in the New York City, which headquarters serves as the Company's nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

155.    Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and because each actually participated in the conduct giving rise to the claims pertaining to sexual harassment, as alleged herein.

156.    Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of sexual harassment, as alleged herein.

157.    As a result of such conduct by Defendant, which has subjected her to sexual harassment in violation of the Administrative Code, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

158.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's New York City-protected rights due to which Plaintiff is entitled to an award of punitive damages against Defendant.

159.    Plaintiff has served the City Commission on Human Rights and Corporation Counsel with this Complaint prior to filing it.

## COUNT XIII

### DISCRIMINATION ON THE BASIS OF RACE
### IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE

160.    Plaintiff realleges paragraphs 1 to 159 and incorporates them by reference as paragraphs 1 to 159 of Count XIII of this Complaint.

161.    The New York City Human Rights Law, Administrative Code of the City of New York, Section 8-101, et seq., particularly Section 107 ("Administrative Code") makes it

unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

162.   Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the Company's headquarters is located in the New York City, which headquarters serves as the Company's nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

163.   Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and each actually participated in the conduct giving rise to the claims pertaining to racial discrimination, as alleged herein.

164.   Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of racial discrimination, as alleged herein.

165.   As a result of such conduct by Defendant, which has subjected her to racial discrimination in violation of the Administrative Code, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

166.    Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff 's New York City-protected rights due to which Plaintiff is entitled to an award of punitive damages against Defendants.

167.    Plaintiff has served the City Commission on Human Rights and Corporation Counsel with this Complaint prior to filing it.

## COUNT XIV

### DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN
### IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE

168.    Plaintiff realleges paragraphs 1 to 167 and incorporates them by reference as paragraphs 1 to 167 of Count XIV of this Complaint.

169.    The New York City Human Rights Law, Administrative Code of the City of New York, Section 8-101, et seq., particularly Section 107 ("Administrative Code") makes unlawful discrimination on the basis of national heritage.

170.    Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the Company's headquarters is located in the New York City, which headquarters serves as the Company's nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

171.   Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and because each actually participated in the conduct giving rise to the claims pertaining to sexual harassment, as alleged herein.

172.   Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of discrimination on the basis of national origin, as alleged herein.

173.   As a result of such conduct by Defendant, which has subjected her to discrimination on the basis of national origin in violation of the Administrative Code Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

174.   Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's New York City-protected rights due to which Plaintiff Min Kou Chenette is entitled to an award of punitive damages against Defendant.

175.   Plaintiff has served the City Commission on Human Rights and Corporation Counsel with this Complaint prior to filing it.

## COUNT XV

### RETALIATION IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE

176.    Plaintiff realleges paragraphs 1 to 175 and incorporates them by reference as paragraphs 1 to 175 of Count XV of this Complaint.

177.    The Administrative Code of the City of New York, specifically Section 8-107(e), makes it unlawful for an employer to discriminate against any person who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

178.    Defendant Company is authorized to do business in the State of New York and its principal place of business is located there. Further, the Company's headquarters is located in the New York City, which headquarters serves as the Company's nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective.

179.    Company employees named herein aided and abetted the unlawful conduct, as alleged herein, and because each actually participated in the conduct giving rise to the claims pertaining to sexual harassment, as alleged herein.

180.    Company management is liable because they had the power to hire and fire Company employees and aided and abetted the acts of discrimination on the basis of national origin, as alleged herein.

181.    As a result of such conduct by Defendant as alleged herein, which has subjected her to retaliation because she has opposed unlawful employment practices and assisted other employees' claims of discrimination in violation of the Administrative Code, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

182.    Because Defendant's treatment of Plaintiff Min Kou Chenette was willful and/or in reckless disregard of Plaintiff Min Kou Chenette's New York City-protected rights due to which Plaintiff Min Kou Chenette is entitled to an award of punitive damages against Defendant.

183.    Plaintiff has served the City Commission on Human Rights and Corporation Counsel with this Complaint prior to filing it.

## COUNT XVI

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
IN VIOLATION OF
NEW YORK COMMON LAW**

184.    Plaintiff realleges paragraphs 1 to 183 and incorporate them by reference as paragraphs 1 to 183 of Count XVI of this Complaint.

185.    New York law recognizes a cause of action for intentional infliction of emotional distress, which makes unlawful certain extreme and outrageous conduct, including sexual harassment and the other actions alleged herein, that results in severe emotional distress and was intended or committed with a disregard for a substantial probability of causing such distress.

186.    By their actions alleged herein Company employees named herein maliciously embarked on a course of conduct, willfully and intentionally causing Plaintiff severe emotional distress without any just cause or provocation in violation of State law.

187.    Defendant Company directed, encouraged, and participated in the wrongful conduct alleged herein.

188.    As a result of Defendant's conduct Plaintiff has become tense, nervous, irritable, depressed and has suffered great mental anguish that has included a great deal of mental and physical suffering and inconvenience.

189.   Because Defendant's treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's common law rights due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT XVII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLATION OF
### NEW YORK COMMON LAW

190.   Plaintiff realleges paragraphs 1 to 189 and incorporates them by reference as paragraphs 1 to 189 of Count XVII of this Complaint.

191.   New York law recognizes a cause of action for negligent infliction of emotional distress, which makes unlawful the failure to exercise due care for the protection of others against unreasonable risk, or which constitutes and unintentional breach of a legal duty causing damage which is foreseeable and without which the damage would not have occurred. This including acts of sexual harassment and other actions alleged herein, that results in severe emotional distress.

192.   By their actions alleged herein Company employees named herein owed Plaintiff a cognizable duty of care. They failed to exercise that duty and Plaintiff suffered severe emotional distress without any just cause or provocation in violation of State law.

193.    As a result of Defendant's conduct Plaintiff has become tense, nervous, irritable, depressed and has suffered great mental anguish that has included a great deal of mental and physical suffering and inconvenience.

194.    Because Defendant's treatment of Plaintiff was in gross and egregious disregard for the consequences for the invasion of Plaintiff's common law rights due to which Plaintiff is entitled to an award of consequential and punitive damages against Defendant.

## COUNT XVIII

### ASSAULT
### IN VIOLATION OF
### NEW YORK COMMON LAW

195.    Plaintiff realleges paragraphs 1 to 194 and incorporates them by reference as paragraphs 1 to 194 of Count XVIII of this Complaint.

196.    New York common law provides a cause of action for assault which consists of the intentional placing of another party in fear of imminent harmful or offensive conduct.

197.    Company employees Packer and Shapiro's actions described hereinbefore caused Plaintiff to suffer physical assault in violation of State law.

198.    Given Defendant Company's knowledge of Ms. Packer's and Ms. Shapiro's hostile behavior directed against Plaintiff and others, this Defendant could have reasonably anticipated and could have prevented such an assault.

199.    As a result of Defendant's conduct, Plaintiff was placed in fear of imminent harmful or offensive conduct.

200.    Defendant's treatment of Plaintiff was in gross and egregious disregard for the consequences for the invasion of Plaintiff's common law rights due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT XIX

### BATTERY
### IN VIOLATION OF
### NEW YORK COMMON LAW

201.    Plaintiff realleges paragraphs 1 to 200 and incorporates them by reference as paragraphs 1 to 200 of Count XIX of this Complaint

202.    New York common law provides a cause of action for battery.  Battery consists of the intentional physical contact upon a party without that party's consent.

203.    Company employees Packer and Shapiro by their actions described hereinbefore caused Plaintiff Min Kou Chenette to suffer battery in violation of New York law.

204.    Given Defendant Company's knowledge of Ms. Packer's and Ms. Shapiro's hostile behavior directed against Plaintiff and others, Defendant could have reasonably anticipated and could have prevented such battery.

205.    As a result of Defendant's conduct, Plaintiff suffered such offensive physical contact without her consent.

206.    Defendant's treatment of Plaintiff was in gross and egregious disregard for the consequences for the invasion of Plaintiff's common law rights due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT XX

### LIBEL PER SE
### IN VIOLATION OF
### NEW YORK COMMON LAW

207.    Plaintiff realleges paragraphs 1 to 206 and incorporates them by reference as paragraphs 1 to 206 of Count XX of this Complaint.

208.    New York common law provides a cause of action for libel per se. Libel per se consists of the publication by writing of a false statement tending to injure the reputation of a living person, exposing him or her to public hatred, contempt or ridicule, or injuring him or her in his or her business or profession.

209.    The publication consisting of Plaintiff's six month performance review, authored sometime shortly before June 17, 2004 by Company employees Montemarano and Rodriguez, contained statements that were false, misleading and defamatory. The statements contained therein accuse Plaintiff of want of ability and want of integrity in her profession or trade and are liable per se.

210.    The statements were made with knowledge that they were false and with actual and common law malice for the purpose of destroying Plaintiff's exemplary reputation.

211.    Although damages are presumed, Plaintiff Chenette has suffered monetary loss as a result of the defamatory statements.

212.    Defendant Company is liable under the theory of respondeat superior and/or negligent hiring and supervision of employees Montemarano and Rodriguez.

213.    Defendant's treatment of Plaintiff in publishing this false and defamatory matter was motivated by actual malice and was wrongfully intended to injure Plaintiff, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT XXI

### LIBEL
### IN VIOLATION OF
### NEW YORK COMMON LAW

214.    Plaintiff realleges paragraphs 1 to 213 and incorporates them by reference as paragraphs 1 to 213 of Count XXI of this Complaint.

215.    New York common law provides a cause of action for libel. Libel consists of the publication by writing of a false statement tending to injure the reputation of a living person, exposing him or her to public hatred, contempt or ridicule, or injuring him or her in his or her business or profession.

216.    The publication consisting of Plaintiff's six month performance review, authored sometime shortly before June 17, 2004 by Company employees Montemarano and Rodriguez contained statements that were false, misleading and defamatory.

217.    The statements were made with knowledge that they were false and with actual and common law malice for the purpose of destroying Plaintiff's exemplary reputation.

218.    Plaintiff has suffered specific monetary loss as a result of the defamatory statements which resulted in injury to her character, her reputation, as well as great pain and mental anguish all to her damage in an amount to be determined at trial.

219.    Defendant Company is liable under the theory of respondeat superior and/or negligent hiring and supervision of employees Montemarano and Rodriguez.

220.    Defendant's treatment of Plaintiff in publishing this false and defamatory matter was motivated by actual malice and was wrongfully intended to injure Plaintiff, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT XXII

### INTENTIONALLY MAKING A FALSE STATEMENT
### IN VIOLATION OF
### NEW YORK COMMON LAW

221.    Plaintiff realleges paragraphs 1 to 220 and incorporates them by reference as paragraphs 1 to 220 of Count XXII of this Complaint.

222.    New York common law provides a cause of action for intentionally making a false statement. This consists of a false and misleading statement that was uttered or published maliciously and with intent to harm another or done recklessly and without regard to the consequences where a reasonably prudent person would or should anticipate that damage.

223.    The publication consisting of Plaintiff's six month performance review, authored sometime shortly before June 17, 2004 by Company employees Montemarano and Rodriguez contained statements that were false and misleading. In addition employee Montemarano made false statements to Plaintiff that she had attitude problems and that she had created a hostile environment for Kenneth Cole Employees. They were published maliciously

and with the intent to harm Plaintiff, or done recklessly and without regard to the consequences. In this case a reasonably prudent person would or should anticipate that damage.

224.   The statements were made with knowledge that they were false and with actual and common law malice for the purpose of destroying Plaintiff's exemplary reputation and impeding her promotion at the Company.

225.   Plaintiff has suffered specific monetary loss as a result of the false statements which were intentionally made, resulting damage to her reputation and preventing her promotion at the Company all to her damage in an amount to be determined at trial.

226.   Defendant Company is liable under the theory of respondeat superior and/or negligent hiring and supervision of Defendants Montemarano and Rodriguez.

227.   Defendant's treatment of Plaintiff in publishing this intentionally false performance review was motivated by actual malice and was wrongfully intended to injure Plaintiff, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

and with the intent to harm Plaintiff, or done recklessly and without regard to the consequences. In this case a reasonably prudent person would or should anticipate that damage.

224.    The statements were made with knowledge that they were false and with actual and common law malice for the purpose of destroying Plaintiff's exemplary reputation and impeding her promotion at the Company.

225.    Plaintiff has suffered specific monetary loss as a result of the false statements which were intentionally made, resulting damage to her reputation and preventing her promotion at the Company all to her damage in an amount to be determined at trial.

226.    Defendant Company is liable under the theory of respondeat superior and/or negligent hiring and supervision of Defendants Montemarano and Rodriguez.

227.    Defendant's treatment of Plaintiff in publishing this intentionally false performance review was motivated by actual malice and was wrongfully intended to injure Plaintiff, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT XXIII

**FRAUDULENT MISREPRESENTATION
IN VIOLATION OF
NEW YORK COMMON LAW**

**MIN KOU CHENETTE
v.
KENNETH COLE PRODUCTIONS, INC.**

228.    Plaintiff realleges paragraphs 1 to 227 and incorporates them by reference as paragraphs 1 to 227 of Count XXIII of this Complaint.

229.    New York common law provides a cause of action for fraudulent misrepresentation consisting of the making of a false material representation by one party, where that party knew of its falsity with the intent to deceive the other party. As a result the other party must believe the representation and reasonably rely on it with resulting damages.

230.    The statements issued by Defendant Company referenced herein were all fraudulent misrepresentations when it came to statements about progressive values, women's rights and equal treatment in its advertisements, promotional materials, employee handbook and made as a part of the stipulation referenced herein where Defendant Company restated "its continuing commitment to eliminating sexual harassment and racial discrimination from the workplace" and stating that " Any company employee engaging in such conduct will be subject to severe disciplinary action."

231.    Plaintiff was ignorant of the falsity of these representations, relied on them and acted to the detriment of her career in reporting illegal conduct to her superiors as Defendant

Company led her to believe was what she should do. Plaintiff's reliance on Defendant Company's statements was both reasonable and foreseeable.

232. Plaintiff has suffered specific monetary loss as a result of the false statements which were intentionally made, resulting damage to her reputation and preventing her promotion at the Company all to her damage in an amount to be determined at trial.

233. Defendant Company's treatment of Plaintiff in publishing these intentionally false representations was motivated by actual malice and was wrongfully intended to injure Plaintiff, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that the Court find in their favor and against Defendants as follows:

a. Declare that, pursuant to Counts I through IV hereof, the acts and conduct of Defendant Company violate Title VII of the Civil Rights Act of 1964 and 1991 and the anti-retaliation provisions of those laws;

b. Declare that, pursuant to Count V hereof, the acts and conduct of Defendant Company violate 42 U.S.C. Section 1981.

c. Declare that pursuant to Counts VI through X hereof, the acts and conduct of Defendant Company violate the New York Human Rights Laws and the anti-retaliation provisions of those laws.

d.      Declare that, pursuant to Counts XI through XV hereof, the acts and conduct of Defendant Company violate the New York City Administrative Code and the anti-retaliation provisions of those laws.

e.      Declare that, pursuant to Counts XVI through XXIII, the acts and conduct of Defendant Company violate Plaintiff Min Kou Chenette's rights under the New York common law.

f.      Award Plaintiff Min Kou Chenette the value of all compensation and benefits lost as a result of Defendants' unlawful conduct, including, but not limited to back pay, reinstatement or, in lieu of reinstatement, front pay, liquidated damages, punitive damages, special damages, interest, costs and attorneys fees; and

g.      Award Plaintiffs such other relief as this Court deems just and proper.

Date:   New York, New York          Respectfully submitted,
        May 19, 2005

                                    LIDDLE & ROBINISON, L.L.P.

                                    By: James A. Batson
                                        James A. Batson (JB 2716)

                                    685 Third Avenue
                                    New York, New York 10017
                                    (212) 687-8500


                                    Mark D. Schwartz, Esquire *
                                    P.O. Box 330
                                    Bryn Mawr, PA 19010

                                    Telephone and fax:
                                    (610) 525-5534

\* Application To Be Admitted Pro Hac Vice Will
be Filed as soon as Practicable.

*Attorneys for Plaintiff Min Kou Chenette*

## CERTIFICATE OF SERVICE

I,                    hereby certify that the Complaint was caused to be served this        day of
May, 2005 upon the following via certified first class mail, postage prepaid to:

Kenneth Cole Productions, Inc
603 West 50th Street
New York New York 10019


The Honorable Patricia Gatling, Commissioner
New York City Commission on Human Rights
40 Rector Street
10th Floor
New York, New York 10006

The Honorable Michael A. Cardozo
New York City Corporation Counsel
100 Church Street
New York, New York 10017

_____